Al Davis Petrovich
1231 Eeloa Ave.  PO Box 336
Rio Dell, CA 95562-1104
707/064-3366
alpetroal@aol.com
Plaintiffs, *In Pro Se*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

**NJV**

| | |
|---|---|
| Al Davis Petrovich, individuals as, | ) CASE NO. **CV 15 0033** |
| Plaintiff(s) | ) |
| vs. | ) **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| OCWEN LOAN SERVICING, LLC, a business entity; WESTERN PROGRESSIVE, LLC a business entity; AND DOES  individuals 1 to 100, Inclusive; and ROES Corporations 1 to 30, Inclusive; | ) **(1) VIOLATION OF 12 U.S.C. § 2605;** |
| | ) **(2) BREACH OF ORAL CONTRACT;** |
| | ) **(3) BREACH OF WRITTEN CONTRACT;** |
| | ) **(4) WRONGFUL FORECLOSURE;** |
| | ) **(5) QUIET TITLE;** |
| | ) **(6) SLANDER OF TITLE;** |
| | ) **(7) CANCELLATION OF INSTRUMENTS;** |
| Defendants. | ) **(8) PROMISSORY ESTOPPEL;** |
| | ) **(9) NEGLIGENCE;** |
| | ) **(10) NEGLIGENT MISREPRESENTATION;** |
| | ) **(11) FRAUD;** |
| | ) **(12) VIOLATION OF THE ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT** |
| | ) **(13) UNFAIR BUSINESS PRACTICES UNDER B&P CODE § 17200 ET SEQ.; AND** |
| | ) **(14) DECLARATORY RELIEF** |
| | ) |
| | ) **REQUEST FOR JURY TRIAL** |

Plaintiff, Al Davis Petrovich, an individual, alleges as follows:

///

///

## PRELIMINARY ALLEGATIONS

Plaintiff alleges Defendants are a third party strangers to the mortgage loan and have relied unjustly on erroneous documents and accounting schemes to have moved when and how they have to foreclose on the Plaintiff's property. The Defendants purport to have lawful authority entitling the collection of additional payments and/ or declare default subsequently moving to foreclose on the Plaintiff's property. By hiding behind the complexities of the mortgage finance system, Defendants are attempting in attempt to further a schemes to create a façade of validity towards their debt collection efforts. Defendants have created a series of documentations that contain materially false representations in violation of Federal and state laws, Internal Revenue codes; by employing individuals who have no personal knowledge of the facts they attest, and falsely represent to Plaintiff, the public record and this court that they have a right to exercise the powers of non-judicial foreclosure on the Plaintiff's property. The Defendants have created a perfect storm of various events including Ocwen's systematic failure to report mortgage interest payments they actually received from the Plaintiff, failure to timely respond to Plaintiff's QWR, failure to abide by terms and conditions of the loan modification, breached the acceleration remedies clause under the deed of trust, and violation of California Homeowners Bill of Rights. The Plaintiff has made numerous efforts to contact Ocwen and other parties alleged to be involved and have only been met with obstruction and skewed information and absence of reasonable care towards efforts to remedy acceleration of the loan. Statutory-compliance precedents have been similarly violated by these Defendants herein the case at bar as alleged within Plaintiff's Complaint. Moreover, the Defendants have attempted to foreclose and are without lawful right to do so. The Plaintiff has been subjected to unlawful foreclosure of the primary residence and brings this action for emergency injunctive relief to enjoin the Defendants who purport to have acquired lawful title at foreclosure sales on the subject Grant / Deed of Trust.

Plaintiff hereby seeks emergency injunctive relief and damages. The Plaintiff bring this action as the home is being fraudulently and/or unlawfully foreclosed upon by Defendants , as the foreclosure having been commenced and advanced in furtherance of the conspiracy pursuant to which every Defendants herein aided and abetted, and/or participated with and/or conspired with the other named Defendants in the wrongful and unlawful course of conduct or otherwise having caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences and events alleged in this Complaint.

1

### JURISDICTION AND VENUE

2

3   This action is asserting violations of California State and federal law. 28 U.S.C § 1332 (a)

states that "[t]he district court shall have original jurisdiction of all civil actions where the matter

4   in controversy exceeds the sume or value of $75,000.00, exclusive of interests and costs, and is

5   between(1) citizens of different States...." Plaintiff is a citizen of California who brings this

6   action as a result of defendants' unlawful conduct concerning a residential mortgage loan for the

7   property located at 1231 Eeloa Ave., Rio Dell, CA 95562-1104. Defendant Ocwen is located in

the State of Florida and Defendant Western Progressive is located within the State of Georgia.

8   Further, the matter exceeds the $75,000 monetary threshold in controversy.

9   The defendants have also violated several federal laws concerning mortgage transactions

10  as well as California statutes. Therefore, this Court has jurisdiction over this matter based on

11  diversity of citizenship, subject matter and Federal question. Moreover, the venue is proper in

12  this Court because a substantial part of events giving rise to the claims herein occurred in

13  Northern California. Venue is therefore proper in the United States District Court, Northern

California.

14

### PARTIES

15

16  1.      Plaintiff Al Davis Petrovich ("Plaintiff" or "Plaintiff") is a resident of Humboldt

17  County, California.

18  2.      Plaintiff is informed and believes and based thereon alleges that Defendant

19  WESTERN PROGRESSIVE, LLC, ( hereinafter "WESTERN" ) is a diversified financial

marketing and /or services company engaged primarily in residential mortgage in banking and/

20  or related businesses with headquarters located in the State of Georgia. Plaintiff is informed and

21  believes and thereon alleges that WESTERN regularly conducts business within the State of

22  California.

23  3.      Plaintiff is informed and believes and based thereon alleges that Defendant

24  OCWEN LOAN SERVICING, LLC, ( hereinafter "OCWEN" ) is a diversified financial marketing

25  and /or services company engaged primarily in residential mortgage n banking and/ or related

26  businesses with headquarters located in the State of Florida. Plaintiff is informed and believes

and thereon alleges that Ocwen regularly conducts business within the State of California.

27

28

4. The defendants herein named as "all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to plaintiff's title or any cloud on plaintiff's title thereto" are hereinafter sometimes referred to as the "unknown defendants" and are unknown to Plaintiff.  These unknown defendants and each of them claim or appear to claim some right, title, estate, lien, or interest adverse to Plaintiff's title in the subject property known as 1231 Eeloa Ave., Rio Dell, CA 95562, legally described as Lot 74 and 75 of Riverside Acres, according to the map thereof on file in the Office of the County Recorder of Humboldt County, California, in Book 12 of Maps, Page 93 and 94.

APN: 052-111-005-00/052-122-021-000

Their claims, and each of them, constitute a cloud on Plaintiff's title to the property.

5. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these defendants by such fictitious names and all persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the property described in this complaint adverse to Plaintiff's title, or any cloud on Plaintiff's title thereto.  Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

6. Defendants sued herein as ROES 1 through 30 are contractually, strictly, negligently, intentionally, vicariously liable and or otherwise legally responsible in some manner for each and every act, omission, obligation, event or happening set forth in this Complaint, and that each of said fictitiously named Defendants is indebted to Plaintiff as hereinafter alleged.

7. The use of the term "Defendants" in any of the allegations in this Complaint, unless specifically otherwise set forth, is intended to include and charge both jointly and severely, not only named Defendants, but all Defendants designated as well.

8. Plaintiff is informed and believe and thereon alleges that, at all times mentioned herein, Defendants were agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and/ or co-conspirators of each of their co-defendants and in doing the things herein after mentioned, or acting within the course and scope of their authority of such agents, servants, employees, alter egos, superiors, successors in interest, joint venturers and/ or co-conspirators with the permission and consent of their co-defendants and, consequently, each Defendant named herein, and those Defendants named herein as DOES 1 through 100, inclusive, are jointly and severally liable to Plaintiff for the damages and harm sustained as a result of their wrongful conduct.

9. Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiff, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

10. Defendants, and each of them, knowingly and willfully conspired, engaged in a common enterprise, and engaged in a common course of conduct to accomplish the wrongs complained of herein. The purpose and effect of the conspiracy, common enterprise, and common course of conduct complained of was, inter alia, to financially benefit Defendants at the expense of Plaintiff by engaging in fraudulent activities. Defendants accomplished their conspiracy, common enterprise, and common course of conduct by misrepresenting and concealing material information regarding the servicing of loans, and by taking steps and making statements in furtherance of their wrongdoing as specified herein. Each Defendant was a direct, necessary and substantial participant in the conspiracy, common enterprise and common course of conduct complained of herein, and was aware of its overall contribution to and furtherance thereof. Defendants' wrongful acts include, inter alia, all of the acts that each of them are alleged to have committed in furtherance of the wrongful conduct of complained of herein.

11. Any applicable statutes of limitations have been tolled by the Defendants' continuing, knowing, and active concealment of the facts alleged herein. Despite exercising reasonable diligence, Plaintiff could not have discovered, did not discover, and was prevented from discovering, the wrongdoing complained of herein.

12. In the alternative, Defendants should be estopped from relying on any statutes of limitations. Defendants have been under a continuing duty to disclose the true character, nature, and quality of their financial services and debt collection practices. Defendants owed Plaintiff an affirmative duty of full and fair disclosure, but knowingly failed to honor and discharge such duty.

///

///

## AGENCY ALLEGATIONS

13. Plaintiff is informed and believes and thereon alleges that at all times herein mentioned, each Defendants was acting as the agent, servant, employee, partner, co-conspirator, and/or joint venture of each remaining Defendant and other discoverable Defendants to be named. Each defendant was acting in concert with each remaining Defendant in all matters alleged, and each Defendant has inherited any and all violations or liability of their predecessors-in-interest. Additionally, each Defendant has passed any and all liability to their successors- in-interest, and at all times were acting within the course and scope of such agency, employment, partnership, and/or concert of action.

## GENERAL ALLEGATIONS

14.     On or about November 14, 2005, Plaintiff entered into a consumer loan transaction with Option One Mortgage (the "Loan") to finance that residential property that is commonly known as 1231 Eeloa Ave., Rio Dell, CA 95562, legally described as Lot 74 and 75 of Riverside Acres, according to the map thereof on file in the Office of the County Recorder of Humboldt County, California, in Book 12 of Maps, Page 93 and 94.

APN: 052-111-005-00/052-122-021-000

Plaintiff executed a Promissory Note ("Note") as part of the Loan transaction.

15.     Subsequently thereafter, on February 13, 2013, OCWEN represented that they were the servicer of Plaintiff's Loan after several years of previous parties servicing the loan.

16.     Plaintiff is informed and believes and based thereon alleges that, on or about February 13, 2013, that Ocwen is in error in the accounting and transactional recordation as it concerns the proper matters of the subject Mortgage.

17.     Subsequently, Plaintiff is informed and believes and based thereon alleges that OCWEN caused a Notice of Default to be recorded, listed itself as the entity for Plaintiff to contact and declared, under penalty of perjury, that the requirements of Section 2923.5 of the California Civil Code had been met.  Thus, the declaration fails to establish compliance with Section 2923.5.

18.     Additionally, Plaintiff's sent OCWEN a written correspondence via certified mail through the United States Postal service. In the written correspondence, Plaintiff included information to enable OCWEN to identify the borrower. Specifically, the written correspondence included the property address, the loan number for the loan being serviced by OCWEN and the name of the borrower Plaintiff Al Petrovich.

19.     The written correspondence was identified in the first paragraph "as a qualified written request under the Federal Servicer Act which is part of the Real Estate Settlement Procedures Act , 12 U.S.C. § 2605." Thereafter, the letter include three reasons (accounting, interest payments and timing of payments) that the borrower believed that the account was in error and requested numerous specific details regarding the  information sought by Plaintiffs including, but not limited to, " [a]complete history of {Plaintiff's]account and payments thereto...{b} complete itemized statement of all advances or charges against this account, [and] complete and  itemized statement of any late charges added to this account."

20.     On October 16, 2014 OCWEN sent a package of irrelevant documentation thus failing to provide proper answers to the requests from the Plaintiff.

21.     Furthermore OCWEN has failed to provide the plaintiff with the necessary recordation of amount of mortgage interest paid by the plaintiff and the required form 1098.

22. OCWEN' method for calculating mortgage interest is not only inconsistent with the previous servicer (Homeward) but wrong under the prevailing tax law.

23.  OCWEN has failed to recognize in calculating the Plaintiff's 2013 mortgage interest payments and amounts that were previously deferred as they did not simply disappear. Plaintiff's still owed the interest when OCWEN took over the serving matters of plaintiff's loan. Had OCWEN calculated interest correctly paid and or due and owing the Plaintiff's would have received Form 1098 and thus timely reported such matters.

24.  Plaintiff has been damaged by OCWEN's erroneous tax reporting.

25.  Since OCWEN refused to provide a correct Form 1098 for Plaintiff's tax reporting they have no other recourse than to include such mattes within the present litigation.

26. Plaintiff is informed and believes and based thereon alleges OCWEN improperly reported the amount of interest paid.(1) the accountancy fees that will be necessary to prepare and file amended tax returns, (2) all the years in which statute of limitations for amending tax returns may have expired, (3) for all years in which statute of limitations expired the accountancy fees

1    necessary to determine the difference in the value of the deduction when and id if taken that
2    should have been if OCWEN had reported and provided the correct amounts in a timely manner.

3           27.     Furthermore, the Defendants failed to conduct the foreclosure sale proceedings
4    of the Subject Property in accordance with the requirements of California Civil Code Sections
5    2923.5 and 2932.5, and Commercial Code Sections 3301, et seq.  Consequently, the Defendants
6    failed to comply with the strict requirements of California Civil Code Sections 2924 et seq.,
     which renders the foreclosure sale of the Subject Property void ab initio as a matter of law.

7           29.     Plaintiff alleges that Defendants, and each of them, are engaged in and continue
8    to engage in violations of California law, including, but not limited to, Business and Professions
9    Code Section 17200 et seq., Civil Code Sections 1709, 2924 et seq and 2932.5 et seq., and
10   unless restrained will continue to engage in such misconduct, and that a public benefit warrants
     that Defendants be restrained from such conduct in the future.

11                      **ALLEGATIONS REGARDING THE TRUST**

12          30.     Plaintiff is informed and believes and thereon alleges that the Trust issued the
13   investment bonds in the mortgage-backed Trust identified herein.  Said securities were
14   underwritten by UBS Securities LLC.  Plaintiff alleges that these securities were duly registered
     with the Securities and Exchange Commission ("SEC") on a registration statement bearing file
15   number 333-124678-09.  The registration statement and other reports and information regarding
16   the Trustee are available at the SEC's Internet site at http://www.sec.gov.  The materials are also
17   available to read and copy at the SEC's Public Reference Room at 100 F. Street, N.E.,
18   Washington, D.C. 20549.

19          31.     In the Assignment of the DOT  the Trust is listed as the holder and owner of the
20   Note and the beneficiary of the Deed of Trust.  However, the Note and Deed of Trust executed
     by Plaintiff identify the mortgagee and note holder as the original lending institution—One
21   Option Mortgage.

22          33.     Plaintiff further alleges that no documents or records have been filed with the
23   Humboldt County Recorder's Office, or provided to Plaintiff, which demonstrate that, prior to
24   the Closing Date of the Trust, the Note was duly endorsed, transferred and delivered to the Trust
25   as required by the PSA.  Plaintiff further alleges that in order for the Trust to have had a valid
26   and enforceable security interest against the Subject Property, the Trust must prove that it
     received an endorsement of the Note prior to the Closing Date of the Trust and that it had

27

28

physical possession of the Note at the time of the foreclosure.  Absent such proof, Plaintiff alleges that the Trust does not have standing to foreclose on the Subject Property.

34.     Pursuant to Section 2.01(b)(A) of the PSA, prior to the Closing Date of  May 12, 2006, the Depositor agreed to deliver to the Custodian on behalf of the Trustee all of the Notes, endorsed in blank, without recourse "with all intervening endorsements showing a complete chain of endorsement from the originator to the Person endorsing the Mortgage Note (each such endorsement being sufficient to transfer all right, title and interest of the party so endorsing, as noteholder or assignee thereof, in and to that Mortgage Note) . . . ."

35.     Plaintiff is informed and believes and thereon alleges that the Note in this case was never actually transferred and delivered  to the Depositor and by the Depositor to the Custodian on behalf of the Trustee for the Trust pursuant to the requirements of Section 2.01 of the PSA.  Moreover, Plaintiff's Loan that was allegedly transferred to the Trust pursuant to the PSA was not listed in any of the documents filed by the Trust and available to the public at www.edgar.gov.  Accordingly, Plaintiff alleges that the Note in this case was never lawfully negotiated and physically delivered to the Trust.

36.     Additionally, the Section 2.01(b)(C) of the PSA provides that, prior to the Closing Date of May 12, 2006, "[t]he Depositor has delivered or caused to be delivered to the Custodian, on behalf of the Trustee, for the benefit of the Certificate holders and the Certificate Insurer, the following documents or instruments with respect to each Mortgage Loan that is not a Cooperative Mortgage Loan so assigned: . . together with, except as provided below, all interim recorded assignments of such mortgage (each such assignment, when duly and validly completed, to be in recordable form and sufficient to effect the assignment of and transfer to the assignee thereof, under the Mortgage to which the assignment relates) . . . ."

37.     Section 2.01(b) of the PSA also provides that: "As promptly as practicable subsequent to such transfer and assignment, set forth in clause (a) above and in any event, within ninety (90) days thereafter, the Custodian shall affix the Trustee's name to each assignment of Mortgage, as the assignee thereof, and, subject to Section 2.02, the Master Servicer shall enforce the obligations of the related Servicer pursuant to the related Servicing Agreement to (i) cause such assignment to be in proper form for recording in the appropriate public office for real property records and (ii) cause to be delivered for recording in the appropriate public office for real property records the assignments of the Mortgages to the Trustee . . . except that the related Servicer need not cause to be recorded any assignment which relates to a Mortgage Loan (a) in

any state where, in an Opinion of Counsel addressed to the Trustee, such recording is not required to protect the Trustee's interests in the Mortgage Loan against the claim of any subsequent transferee or any successor to or creditor of the Depositor or the Transferor, (b) in any state where recordation is not required by either Rating Agency to obtain the initial ratings on Certificates set forth in the Prospectus Supplement or (c) with respect to any Mortgage which has been recorded in the name of MERS, or its designee." Plaintiff alleges that none of the exceptions apply to Plaintiff's Loan. Accordingly, the PSA required the Assignment of the DOT to be recorded within ninety (90) days of the assignment of the loan to the Trust which had to occur by May 12, 2006. Based upon information and belief, the Assignment of the DOT did not occur by May 12, 2006, or ninety (90) days thereafter, long after the Trust had closed. Said Assignment was ineffective as the Trust could not have accepted the DOT after the Closing Date pursuant to the PSA and the requirements for a REMIC Trust. If the assignment was made after the closing date, the non-compliance with the REMIC statutes would terminate the trust by extinguishing its tax exempt status under the REMIC statutes.

38.     Therefore, Plaintiff alleges upon information and belief that the Trust did not hold any interest in Plaintiff's Loan and, therefore, did not have standing to foreclose on the Subject Property . The fact that Dfendants acted as beneficiary of the DOT , long after the Closing Date of the Trust on May 12, 2006, clearly establishes that Plaintiff's Loan was never transferred to the Trust. If it was transferred, pursuant to the PSA, the Trust would have become the beneficiary and owner of the Note and DOT on May 12, 2006, or, at the very latest, ninety (90) days thereafter. Therefore, the foreclosure of the Subject Property, as well as the NOD, SOT, Assignment of DOT, First NOS, Second NOS and TDUS, were wrongful and void ab initio. None of the Defendants hold a legal or equitable interest in the Subject Property. 

39.     Division 9 of the Uniform Commercial Code mandates that in order to perfect a security interest the foreclosing party must produce the original Note and Deed of Trust, otherwise the sale is null and void and/or voidable. See, *In re Golden Plan of California, Inc.*, 829 F.2d 705, 708 (9th Cir.1986); *Huffman v. Wilke (In re Staff Mortgage & Investment Corp.*, 550 F.2d 1228 (9th Cir.1977).

40.     The gravamen of Plaintiff's complaint is that Defendants are conducting a foreclosure sale of the Subject Property without any legal authority or standing to do so, and are in violation of a myriad of State and Federal laws which were specifically enacted to protect consumers such as Plaintiff from the type of abusive, deceptive, and unfair conduct in which Defendants engaged which are detailed herein by failing to follow the procedure prescribed by such laws to foreclose property.  Additionally, the Defendants' foreclosure is  wrongful as they purported to engage in negotiations with Plaintiff to modify or otherwise negotiate a workout of the Loan with Plaintiff and Plaintiff relied on such negotiations and forwent seeking relief, but Defendants surreptitiously (i.e., without providing adequate notice) sold the Subject Property at a foreclosure sale even though they had even accepted payments during the workout negotiations and before, during and after the foreclosure sale.  The Defendants have caused Plaintiff damages as well as severe emotional distress.

## FIRST CAUSE OF ACTION
### (Violation of 12 U.S.C. § 2605)
### (Against Defendants OCWEN and DOES 1-100)

41.     Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 40, inclusive, as though fully set forth herein.

42.     Pursuant to 12 U.S.C. §2605 (e) (1) (A), a " servicer shall provide a written response acknowledging receipt of the {qualified written request] within 5 days( excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." A Qualified written request" is a written correspondence.....that (i) includes , or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C.§ 2605(e)(1)(B).

43.     On February 13, 2013 Ocwen became the servicer of Plaintiff's loan. Shortly thereafter, Plaintiff sent Ocwen a written correspondence via certified mail which included information to enable Ocwen to identify the borrower. The written request was identified, in the first paragraph, " as a qualified written request' under the Federal Servicer Act, which is part of the Real Estate Settlement Procedures Act, 12 U.S.C. §2605 (e). Thereafter, the letter included the ree reasons that the borrower believed that the account was in error and requested numerous

specific details regarding the information sought by the plaintiffs including, but not limited to, "[a] complete history of [Plaintiff's] account and payments thereto…[a] complete itemized statement of all advances or charges against this account, [and ] complete itemized statement of interests payments and late charges added to this account."

44.    While Ocwen responded on October 16, 2014, however, Ocwen failed to address any of the concerns on the plaintiff's account only submitting to sending copies of the original DOT. Accordingly, Plaintiffs have yet to receive any adequate and lawful response under the "qualified written request".

45.    Further, 12 U.S.C. §2605 (e) (3) provides that "[d]uring the 60 day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding borrowers payments, a servicer may not provide information regarding any overdue payment…to any consumer reporting agency."

46.    Therefore Ocwen is barred from providing any information regarding any perceived overdue payments by Plaintiffs to any consumer reporting agency. However, it appears Ocwen has violated the Plaintiff's consumer rights under the law and reported to several consumer reporting agencies including but not limited to, Trans Union, that the plaintiff's account was past due. The negative report had the effect of lowering Plaintiff's credit score thus, causing actual damage to Plaintiff according to proof at trial.

47.    As a result of defendants conduct, Plaintiff has suffered actual damages including , but not limited to their credit. Plaintiff is entitled to receive $5,000 per instance where defendant recorded a confidential conversation, without other party's knowledge or consent as a well as also attorney's fees and costs.

## SECOND CAUSE OF ACTION

### (Breach of Oral Contract)

### (Against Defendants OCWEN and DOES 1-100)

48.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 47, inclusive, as though fully set forth herein.

49.    Ocwen's representatives reiterated and assured Plaintiff that they would not proceed or continue with the foreclosure process with regard to the Subject Property while they were reviewing Plaintiff's request accounting and for a loan modification of the Loan pursuant to HAMP. The contract was not an agreement to continue the specific date of the trustee's sale on the Subject Property as Plaintiff was unaware that a date had been set for the trustee's sale.

Owen never disclosed to Plaintiff that the Subject Property was set for sale on January 7, 2015. Plaintiff was still waiting for the results of the review of accounting as per his request and also for a loan modification when Defendants initiated foreclosure proceedings.

50.     Accordingly, Ocwen breached the oral agreement it entered into with Plaintiff not to proceed with the foreclosure process while it was reviewing Plaintiff's request for a loan modification.  As a proximate result of Ocwen's 's breaches, Plaintiff has suffered, and will continue to suffer, consequential damages in an amount according to proof at trial.

### THIRD CAUSE OF ACTION
### (Breach of Written Contract)
### (Against Defendants OCWEN and DOES 1-100)

51.     Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 50, inclusive, as though fully set forth herein.

52.     Additionally, based upon information and belief, Ocwen and DOES 1 through 100, entered into a Servicer Participation Agreement ("SPA") with Fannie Mae (acting as an agent of the federal government) in which Ocwen  and DOES 1 through 100 agreed to apply the Treasury Department's HAMP criteria to all of the loans they service, including Plaintiff's.

53.     Based upon information and belief, pursuant to the SPA and HAMP, Ocwen and DOES 1 through 100 agreed to suspend all pending foreclosure proceedings until the HAMP analysis was completed for all homeowners, including Plaintiff.  Plaintiff is a third party beneficiary of this agreement.

54.     Based upon information and belief, pursuant to the SPA and the HAMP, Ocwen and DOES 1 through 100 agreed to offer a 3 month HAMP Trial Period at a payment level of 31 percent of income to all borrowers, including Plaintiff, who meet the HAMP criteria and pass the NPV test.

55.     Based upon information and belief, Ocwen and DOES 1 through 100 breached the SPA agreement with the federal government of which Plaintiff was a third party beneficiary by not offering Plaintiff a HAMP Trial Period at a payment level of 31 percent of his income even though he met the HAMP criteria and passed the NPV test.

56.     As a proximate result of Ocwen and DOES 1 through 100's breaches, Plaintiff has suffered, and will continue to suffer, consequential damages in an amount according to proof at trial.

**FOURTH CAUSE OF ACTION**

(Wrongful Foreclosure)

(Against All Defendants)

57.     Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 56, inclusive, as though fully set forth herein.

58.     Plaintiff is informed and believes and thereon alleges that after the origination and funding of his Loan, it was sold or transferred to investors or other entities and that Defendants named herein along with discoverable DOES and ROES did not own the loans or the corresponding notes at the time of the foreclosure sale. Moreover, Defendants named herein along with discoverable DOES and ROES was not lawfully appointed as trustee by Option One Mortage. Accordingly, none of the Defendants in this action had the right to declare default, cause notices of default to be issued or recorded, or foreclose on Plaintiff's interest in the Subject Property. None of the Defendants in this action was the note holder or a beneficiary of Plaintiff's Loan at the time of foreclosure proceeding commenced.

59.     Plaintiff further alleges on information and belief that none of the Defendants in this action were beneficiaries or representatives of the beneficiary. That is, none of them were assigned the Note and/or DOT executed by Plaintiff. Also, Defendants named herein along with discoverable DOES and ROES failed to record the Limited Power of Attorney concurrently with the NOD, SOT and First NOS and Assignment of DOT as required under California law. Moreover, none of the signatories to the NOD, SOT, First NOS, Second NOS, Assignment of DOT, and TDUS had the authority to execute said documents. None of said documents properly disclosed the principals that the individual was signing for. Moreover, the NOD was invalid and void as it was executed by prior to the date that it was allegedly substituted in as trustee. Consequently, all documents upon which the NOD was based were invalid and void as well.

60.     Defendants named herein along with discoverable DOES and ROES breached its obligation to Plaintiff to modify the loan by proceeding with a foreclosure of the Subject Property . Defendants further breached the provisions of Civil Code Section 2924g(c)(1) which requires postponement of a foreclosure sale by "mutual agreement, whether oral or in writing, of any trustor and any beneficiary."

Here, Plaintiff had an oral agreement not to proceed with a foreclosure of the Subject Property. Defendants named herein along with discoverable DOES and ROES breached it. Furthermore, Defendants named herein along with discoverable DOES and ROES breached Sections 2924f

and 2924g by not providing proper notice of the postponement of the trustee's sale scheduled for January 7, 2015, and not providing notice pursuant to the strict requirements of said code sections.

61. Among other things, Defendants agreed to postpone any sale if Plaintiff applied for a modification of the Loan and even took agreed-upon monthly payments as consideration for such agreement but nevertheless sold the Subject Property at a sale conducted without notice to Plaintiff. Any notice previously provided was rendered ineffective by Defendants named herein along with discoverable DOES and ROES 's acts and omissions.

62. Additionally, Defendants named herein along with discoverable DOES and ROES breached the SPA by failing to review the financial information of Plaintiff and negotiate a loan modification with Plaintiff in good faith. Plaintiff is informed and believes that Defendants named herein along with discoverable DOES and ROES received a substantial amount of TARP funds from the federal government, a condition of which was that Defendants named herein along with discoverable DOES and ROES was required to comply with the provisions of the SPA. As Defendants named herein along with discoverable DOES and ROES breached their obligations not to foreclose during the review period, the trustee's deed upon sale was issued in violation of the SPA and is void.

63. Also, Defendants violated California Civil Code §2923.5(a), which requires a "mortgagee, beneficiary or authorized agent" to "contact the borrower or person by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. "Section 2923.5(b) requires a default notice to include a declaration "from the mortgagee, beneficiary, or authorized agent" of compliance with section 2923.5, including attempt "with due diligence to contact the borrower as required by this section." None of the Defendants assessed Plaintiff's financial situation correctly or in good faith prior to filing the Notices of Default against the Subject Property in this action. Additionally, the declaration was executed on behalf of a corporation that was not in existence at the time of the declaration. Also, the declaration did not satisfy the requirements of Section 2923.5. Accordingly, the Defendants did not fulfill their legal obligation to Plaintiff prior to filing of the Notices of Default and, therefore, any acts based on the Notice of Default taken thereafter were invalid and void.

64. Alternatively, as a result of Defendants named herein along with discoverable DOES and ROES 's violation of the Security First Rule, Defendants named herein along with

discoverable DOES and ROES   no longer had a security interest in the Subject Property at the time of foreclosure proceeding s were initiated.  Accordingly, Defendants were prohibited from invoking the power of sale provision in the DOT as the Subject Property no longer secured the debt allegedly owed to Defendants named herein along with discoverable DOES and ROES  .

65.     Consequently, Defendants engaged in a fraudulent and wrongful foreclosure proceedings of the Subject Property in that Defendants did not have the legal authority to foreclose on the Subject Property and, alternatively, if they had the legal authority, they failed to comply with Civil Code Sections 2923.5 and 2923.6.

66.     As a result of the above-described breaches and wrongful conduct by Defendants, Plaintiff has suffered general and special damages in an amount according to proof at trial.

## FIFTH CAUSE OF ACTION

### (Quiet Title)

**(Against Defendants OCWEN and WESTERN, All Persons Unknown, Claiming Any Legal Or Equitable Right, Title, Estate, Lien, Or Interest In The Property Described In The Complaint Adverse To Plaintiff's Title Or Any Cloud On Plaintiff's Title Thereto and DOES 1 through 100)**

67.     Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 66, inclusive, as though fully set forth herein.

68.     Plaintiff is the legal owner of the property that is commonly known as APN 052-111-005-00/052-122-021-000, 1231 Eeloa Ave., Rio Dell, CA 95562 , and described as Lot 74 and 75 of Riverside Acres, according to the map thereof on file in the Office of the County Recorder of Humboldt County, California, in Book 12 of Maps, Page 93 and 94.

69.     Plaintiff seeks to¹quiet title against the claims of US Bank, Wells Fargo, and anyone else claiming interest in the property.  Defendants named herein along with discoverable DOES and ROES  and any successors or assignees have no right to title or interest in the property and no right to entertain any rights of ownership including rights of possession.

70.     Plaintiff seeks to quiet title .  Plaintiff seeks a judicial declaration that the title to the Subject Property is vested in Plaintiff alone and that Defendants and each of them be declared to have no interest estate, right, title or interest in the Subject Property and that Defendants, their agents and assigns, be forever enjoined from asserting any estate, right title or interest in the Subject Property.

71.     As Defendants did not have any legal ownership or interest in the Subject Property on the date of foreclosure, allegedly obtained the Subject Property through fraud and wrongful conduct, and failed to adhere to the strict statutory requirements to effectuate the foreclosure sale of the Subject Property, the foreclosure sale was void and invalid.  Therefore, the Subject Property is still Plaintiff's property.

72.     Accordingly, the Court should rule that the Subject Property remains Plaintiff's property and award consequential damages as proven at trial.

### SIXTH CAUSE OF ACTION
### (Slander of Title)
### (Against All Defendants)

73.     Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 72, inclusive, as though fully set forth herein.

74.     Defendants named herein along with discoverable DOES and ROES , purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust, wrongfully and without privilege, caused a Notice of Default, Substitution of Trustee, and Assignment of Deed of Trust to be recorded against the Subject Property.

75.     Thereafter, Defendants named herein along with discoverable DOES and ROES , again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust, wrongfully and without privilege, caused two Notices of Trustee's Sales to be recorded against the Subject Property.

76.     Finally, Defendants named herein along with discoverable DOES and ROES , again purportedly but falsely acting as either the trustee or the agent of the beneficiary of the Deed of Trust, wrongfully and without privilege, caused a Trustee's Deed Upon Sale to be recorded against the Subject Property.

77.     None of the Defendants, whether jointly or severally, is a trustee, beneficiary or assignee of any beneficiary of any Deed of Trust recorded against the Subject Property. Accordingly, they wrongfully caused the recording of the Notice of Default, Assignment of the Deed of Trust, Substitution of Trustee, Notices of Trustee's Sales and Trustee's Deed Upon Sale against the Subject Property.

78.     By doing the acts described above, Defendants slandered Plaintiff's title to the Subject Property.

79. In that the conduct and acts of Defendants violated, among others, California Civil Code section 2924(a)(1)(C), such conduct and acts were not privileged.

80. The wrongful conduct of Defendants caused Plaintiff to suffer damages in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION

**(Cancellation of Instrument(s) – SOT, NOD, Assignment of DOT, NOTS and TDUS)**

**(Against All Defendants)**

81. Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 80, inclusive, as though fully set forth herein.

82. If the wrongfully recorded SOT, NOD, Assignment of DOT, First NOTS, Second NOTS and TDUS instruments are left outstanding, Plaintiff will continue to suffer loss and damages.

83. Plaintiff therefore seeks cancellation of the following recorded instruments, a) the SOT; b) the NOD; c) Assignment of DOT; d) the First NOTS; e) the Second NOTS and; f) the TDUS.

84. Plaintiff is informed and believes, and therefore alleges, that Defendants named herein along with discoverable DOES and ROES acted willfully and with a conscious disregard for Plaintiff's rights and with a specific intent to defraud and injure Plaintiff, by causing the SOT, the NOD, the Assignment of the DOT, the First NOTS, the Second NOTS and the TDUS instruments to be prepared and recorded without a factual or legal basis for doing so.

85. Upon information and belief, these acts by Defendants constitute fraud, oppression and malice under Cal. Civil Code §3294. Defendants acted with a conscious disregard for the requirements to conduct a non-judicial foreclosure sale under civil code 2924 et sec. knowing they had taken a calculated risk that Plaintiff would not contest.

86. By virtue of Defendants' willful and wrongful conduct as herein alleged above, Plaintiff is entitled to general and special damages according to proof at trial, as well as punitive and exemplary damages as determined by this Court.

### EIGHTH CAUSE OF ACTION

**(Promissory Estoppel)**

**(Against Defendant OCWEN)**

87. Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 86, inclusive, as though fully set forth herein.

88.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 34.

89.     Defendants named herein along with discoverable DOES and ROES  made a promise, through oral and written representations, that they would not foreclosure on the Subject Property if Plaintiff's completed an application for a loan modification and made monthly payments in an amount certain to Defendants.

90.     Defendants named herein along with discoverable DOES and ROES  0 should have reasonably expected that Plaintiff would rely on such promise;

91.     Plaintiff did in fact justifiably rely on that promise by completing the application and making payments rather than pursuing alternate measures to avoid the foreclosure sale. Additionally, Plaintiff could have explored the possibility of refinancing or marketing and selling the Subject Property, either of which would have been an option as the property was generating income for Plaintiff.  Accordingly, Defendants named herein along with discoverable DOES and ROES  were estopped from taking any action that was contrary to the written and oral promises made by it to Plaintiff.

92.     Additionally, pursuant to the SPA and HAMP, Defendants named herein along with discoverable DOES and ROES  promised to suspend all pending foreclosure proceedings until the HAMP analysis was complete for all homeowners, including Plaintiff.  Plaintiff is a third party beneficiary of this agreement.

93.     Pursuant to the SPA and the HAMP, Defendants named herein along with discoverable DOES and ROES  agreed to offer a 3 month HAMP Trial Period at a payment level of 31 percent of income to all borrowers, including Plaintiff, who met the HAMP criteria and passed the NPV test.

94.     Defendants named herein along with discoverable DOES and ROES  breached the SPA agreement with the federal government of which Plaintiff is a third party beneficiary. Accordingly, Defendants named herein along with discoverable DOES and ROES  should be estopped from claiming any benefit from the foreclosure due to its violation of the SPA.

95.     As a result of Defendants named herein along with discoverable DOES and ROES 's false promises and misrepresentations, Plaintiff suffered special and general damages in an amount according to proof at trial.

///

///

PLAINTIFF'S COMPLAINT
19

### NINTH CAUSE OF ACTION

#### (Negligence)

#### (Against All Defendants)

96.     Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 95, inclusive, as though fully set forth herein.

97.     At all times relevant herein, Defendants named herein along with discoverable DOES and ROES , acting as Plaintiff's lenders and/or servicers, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, disclosing to Plaintiff the status of any foreclosure actions taken by it, disclosing who owned Plaintiff's Loan to Plaintiff, refraining from taking any action against Plaintiff that it did not have the legal authority to do, and providing all relevant information regarding the Loan Plaintiff had with them to Plaintiff.

98.     In taking the actions alleged above, and in failing to take the actions as alleged above, Defendants named herein along with discoverable DOES and ROES  breached their duty of care and skill to Plaintiff in the servicing of Plaintiff's loans by, among other things, failing to disclose to Plaintiff that it was foreclosing on Plaintiff's Subject Property while telling him the opposite, treating Home Mortgage as a separate entity to confuse and mislead Plaintiff, preparing and recording false documents, and foreclosing on the Subject Property without having the legal authority and/or proper documentation to do so.

99.     At all times relevant herein, Defendants named herein along with discoverable DOES and ROES , acting as the alleged trustee under the DOT, but without the legal authority to do so, had a duty to exercise reasonable care and skill to follow California law with regard to foreclosures, avoid any conflicts of interest in exercising its duties, and refrain from taking any action against Plaintiff that it did not have the legal authority to do.

100.    In taking the actions alleged above, and in failing to take the actions as alleged above, Defendants named herein along with discoverable DOES and ROES  breached its duty of care and skill to Plaintiff by failing to properly train and supervise its agents and employees with regard to California law regarding the execution and recording of foreclosure documents; executing the SOT, NOD, Assignment of DOT, First NOS, Second NOS and TDUS without the legal authority to do so; failing to follow California law with regard to foreclosures, including,

but not limited to, acting as the trustee under the DOT when it did not have the legal authority to do so; and taking actions against Plaintiff that it did not have the legal authority to do.

101.    As a direct and proximate result of the negligence and carelessness of Defendants as set forth above, Plaintiff suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**

**(Negligent Misrepresentation)**

**(Against Defendants  and DOES 1 through 100)**

102.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 101, inclusive, as though fully set forth herein.

103.    Defendants named herein along with discoverable DOES and ROES  made representations to Plaintiff that they would postpone the foreclosure sale of the Subject Property if Plaintiff completed an application for a loan modification and made monthly payments in an amount certain to them.

104.    Defendants named herein along with discoverable DOES and ROES  's representations were not true.

105.    Defendants named herein along with discoverable DOES and ROES  had no reasonable grounds for believing the representations were true when they made them.

106.    Defendants named herein along with discoverable DOES and ROES  intended that Plaintiff rely on the representations.

107.    Plaintiff reasonably and justifiably relied on the representations to his detriment.

108.    As a proximate result of OCWEN , WESTERN and DOES 1 through 100's negligent conduct, Plaintiff has suffered, and will continue to suffer, general and special damages in an amount according to proof at trial.

**ELEVENTH CAUSE OF ACTION**

**(Fraud)**

**(Against Defendants  and DOES 1 Through 100)**

109.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 108, inclusive, as though fully set forth herein.

110.    Defendants named herein along with discoverable DOES and ROES  , orally and in writing, represented to Plaintiff that the Subject Property would not be foreclosed during the time that a loan modification was being reviewed and he made monthly payments.  As set forth

PLAINTIFF'S COMPLAINT

21

above, the oral representations were made by employees of Defendants named herein along with discoverable DOES and ROES

111.   Defendants named herein along with discoverable DOES and ROES  failed to disclose to Plaintiff that they intended to foreclose on the DOT regardless of the agreement. Furthermore, Defendants named herein along with discoverable DOES and ROES  fraudulently represented that they were separate entities so as to confuse and mislead Plaintiff into believing that  the servicer had authority to act.

112.   The representations of Defendants named herein along with discoverable DOES and ROES were false and fraudulent as they caused a trustee's sale to be scheduled on January 7, 2015 without Plaintiff's knowledge.  Although Plaintiff had numerous communications with Defendants named herein along with discoverable DOES and ROES   prior to January 7, 2015, they never disclosed to Plaintiff that the Subject Property would be sold at a trustee's sale on January 7, 2015.  Defendants named herein along with discoverable DOES and ROES intentionally made the representations as part of their pattern and practice to deceive borrowers such as Plaintiff into relying to their detriment so that they could foreclose on homes before borrowers could seek other remedies or options.  The exact same thing happened to Plaintiff. Plaintiff justifiably relied on the oral and written representations of Defendants named herein along with discoverable DOES and ROES that no foreclosure would take place during the loan modification process and did not seek other remedies or pursue other options during the process. As a proximate result of Defendants named herein along with discoverable DOES and ROES's fraudulent misrepresentations, Plaintiff is subject to losing his home.

113.   Accordingly, as a result of Defendants named herein along with discoverable DOES and ROES 's fraudulent conduct, Plaintiff has suffered, and will continue to suffer, compensatory, general and special damages in an amount to proof.  Additionally, Defendants named herein along with discoverable DOES and ROES  acted with malice, fraud and/or oppression and, thus, Plaintiff is entitled to an award of exemplary and punitive damages.

///

///

///

**TWELFTH CAUSE OF ACTION**

**(Violation of the Rosenthal Fair Debt Collection Practices Act)**

**(Against All Defendants and DOES 1 Through 100)**

114.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 113, inclusive, as though fully set forth herein.

115.    Plaintiff is a consumer and the obligation between the parties is a debt owed pursuant to the subject notes and trust deeds and is a consumer debt pursuant to the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act").

116.    Defendants named herein along with discoverable DOES and ROES are lender and mortgage servicing companies that are in the business of collecting and processing mortgage payments.

117.    The representative of Defendants named herein along with discoverable DOES and ROES made false misrepresentations in connection with the debt secured by the DOT on the Subject Property. Specifically, Defendants named herein along with discoverable DOES and ROES represented that if Plaintiff submitted an application for a loan modification and monthly payments were made, they would not foreclose on the Subject Property. This representation was false and fraudulent, Defendants named herein along with discoverable DOES and ROES initiated foreclosure on the Subject Property anyway without notice.

118.    As a proximate result of Defendants named herein along with discoverable DOES and ROES 's violations of the Rosenthal Act, Plaintiff is entitled to actual and statutory damages, attorney's fees and costs, and such other relief as the court determines is due.

**THIRTEENTH CAUSE OF ACTION**

**(Unfair Practices under California Business & Professions Code Section 17200, et seq.)**

**(Against All Defendants)**

119.    Plaintiff incorporates herein by reference the allegations made in paragraphs 1 through 118, inclusive, as though fully set forth herein.

120.    California Business & Professions Code Section 17200, et seq., prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice . . ." and conduct which is "likely to deceive" and is "fraudulent" within the meaning of Section 17200.

121.   As more fully described above, Defendants' acts and practices are likely to deceive, constituting a fraudulent business act or practice.  This conduct is ongoing and continues to this date.

122.   Specifically, as fully set forth above, Defendants engage in deceptive business practices with respect to mortgage loan servicing, assignments of notes and deeds of trust, foreclosure of residential properties and related matters by, among other things,

(a)  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

(b)  Executing and recording false and misleading documents;

(c)  Executing and recording documents without the legal authority to do so;

(d)  Failing to disclose the principal for which documents were being executed and recorded in violation of California Civil Code Section 1095;

(e)  Failing to record Powers of Attorney in connection with other recorded documents in violation of California Civil Code Section 2933;

(f)  Violating the Security First Rule;

(g)  Demanding and accepting payments for debts that were non-existent;

(h)  Acting as beneficiaries and trustees without the legal authority to do so;

(i)  Failing to give proper notice of a trustee's sale and the postponement of the sale pursuant to California Civil Code Sections 2924g and 2924h;

(j)  Failing to comply with California Civil Code Section 2923.5;

(k)  Failing to comply with the HAMP guidelines;

(l)  Misrepresenting the foreclosure status of properties to borrowers; and

(m)  Other deceptive business practices.

123.   Plaintiff alleges that by engaging in the above described acts and/or practices as alleged herein, Defendants have violated several California laws and regulations and said predicate acts are therefore per se violations of California Business and Professions Code Section 17200, et seq.

124.   Plaintiff alleges that Defendants' misconduct, as alleged herein, gave, and have given, Defendants an unfair competitive advantage over their competitors.  The scheme implemented by Defendants is designed to defraud California consumers and enrich the Defendants.

125. The foregoing acts and practices have caused substantial harm to California consumers.

126. Plaintiff alleges that as direct and proximate result of the aforementioned acts, Defendants have prospered and benefitted from Plaintiff by collecting mortgage payments and fees for foreclosure related services, and have been unjustly enriched from their act of foreclosing on Plaintiff's home when they had agreed not to do so and/or to do so in compliance with applicable laws.

127. By reason of the foregoing, Defendants have been unjustly enriched and should be required to disgorge their illicit profits and/or make restitution to Plaintiff and other California consumers who have been harmed, and/or be enjoined from continuing in such practices pursuant to California Business & Professions Code Sections 17203 and 17204. Moreover, as a result of the aforementioned acts and conduct, Plaintiff has lost money and property and suffered injury in fact, and other members of the public falling victim to Defendants' schemes are likely to be injured.

128. The harm to Plaintiff and to members of the general public outweighs the utility of Defendants' policy and practices. Consequently, their policy and practices constitute an unlawful business act or practice within the meaning of Business and Professions Code §17200. Further, the foregoing conduct threatens an incipient violation of a consumer law, or violates the policy or spirit of such law or otherwise significantly threatens or harms competition.

129. Defendants' practices described above are likely to mislead the general public, and therefore, constitute a fraudulent business act of practice within the meaning of Business and Professions Code §17200. The Defendants' unfair, unlawful, and fraudulent business practices and false and misleading advertising present a continuing threat to members of public in that other consumers will be defrauded into having their property improperly sold at foreclosure. Plaintiff and other members of the general public have no other adequate remedy of law.

130. Plaintiff is therefore entitled to injunctive relief and attorney's fees as available under California Business and Professions Code Sec. 17200 and related sections. These acts and practices, as described in the previous paragraphs, are unfair and violate Business and Professions Code § 17200 because their policies and practices described above violate all the statutes previously listed as well as California Civil Code § 1709, and consequently, constitute

and unlawful business act of practice within the meaning of Business and Professions Code § 17200.

## FOURTEENTH CAUSE OF ACTION
### Declaratory Relief
### (Against All Defendants)

131.   Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 130, inclusive, as though fully set forth herein.

132.   Defendants Ocwen and Western have taken actions in violation of their statutory, legal and contractual duties.  Said actions have resulted in the wrongful foreclosure of the Subject Property.  An actual dispute exists between Plaintiff and Defendants named herein along with discoverable DOES and ROES as to the ownership of the Subject Property, and the validity, if any, and amount, if any, of the liens that were on the Subject Property prior to foreclosure proceedings.

133.   Due to the dispute as to the rights and interests of the parties to the Subject Property, Plaintiff requests that the Court declare the rights of the parties in this matter.  Plaintiff requests that the Court enforce these rights with the issuance of injunctions or restraining orders as may be necessary to place the parties in their proper position with respect to their interests, if any, in the Subject Property.

## JURY DEMAND

Plaintiff demands a jury trial for all causes of action set forth herein.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against the Defendants and each of them, jointly and severally, as follows:

1.   For a declaration of the rights and duties of the parties, specifically that the foreclosure of the Subject Property was wrongful.

2.   For a declaration that Plaintiff is the true and rightful owner of the Subject Property.

3.   For issuance of an Order canceling the SOT, NOD, Assignment of DOT, First NOS, Second NOS and any TDUS.

4.   To vacate the TDUS in the event a sale takes place pending the instant court action.

5.      To vacate and set aside the foreclosure sale.

6.      To quiet title in favor of Plaintiff and against Defendants.

7.      For compensatory, special and general damages in an amount according to proof at trial, but not less than $1,000,000, against all Defendants.

8.      For punitive damages in an amount to be determined by the Court against all Defendants.

9.      Pursuant to Business and Professions Code § 17203, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein.

10.     For civil penalties pursuant to statute, restitution, injunctive relief and reasonable attorney's fees according to proof.

11.     For reasonable attorney's fees and costs.

12.     For reasonable costs of suit and such other and further relief as the Court deems proper.

DATED: January 5th , 2015              Respectfully submitted:

By:    _Al Davis Petrovich_
       Al Davis Petrovich ( pro se)

## VERIFICATION

I, , am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof.  The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at Fortuna , California this 5th day of January, 2015.

Notary seal:

       _Al Davis Petrovich_
       Plaintiff  Al Davis Petrovich

Notary signature: See attachment
for correct wording

PLAINTIFF'S COMPLAINT

27

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

CIVIL CODE § 1189

State of California

County of Humboldt }

On 01-05-2015 before me, Rachal Fournier Notary Public
Date _____ Here Insert Name and Title of the Officer

personally appeared Al Davis Detrovich
_____ Name(s) of Signer(s)

_____

RACHAL FOURNIER
COMM. #2021362
NOTARY PUBLIC • CALIFORNIA
HUMBOLDT COUNTY
My Comm. Expires May 1, 2017

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____
Place Notary Seal Above                Signature of Notary Public

―――――――――― **OPTIONAL** ――――――――――

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: Legal Docs to Ocwen Loan

Document Date: 01-05-2015 _____ Number of Pages: 88

Signer(s) Other Than Named Above: None _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Individual | ☐ Individual |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Attorney in Fact | ☐ Attorney in Fact |
| ☐ Trustee | ☐ Trustee |
| ☐ Guardian or Conservator | ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| RIGHT THUMBPRINT OF SIGNER — Top of thumb here | RIGHT THUMBPRINT OF SIGNER — Top of thumb here |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

© 2010 National Notary Association • NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)          Item #5907

1

2

## PROOF OF SERVICE

3        I am a citizen of the United States and a resident of Humboldt County. I am employed in
the County of Humboldt, State of California. I am over the age of eighteen (18) and not a party to the
4   action herein. My business address is _____, _____, CA_____.
        On _____day of _____, 2015 , I served the foregoing Document(s)
5   described as:
        COMPLAINT, SUMMONS, NOTICE OF PENDENCY OF ACTION C.C. P. § 405.20,; on all
6   parties in said action by placing a true copy thereof enclosed in sealed envelope as follows:

7

Ocwen Loan Servicing, LLC
8   Ocwen Financial Corporation
1661 Worthington Rd. , Suite 100
9   West Palm Beach, Florida 33409

10

11  Western Progressive, LLC
2002 Summit Blvd. , Ste. 600
12  Atlanta, GA 30319

13

14
    [  ] BY MAIL - I caused such envelope(s) with postage thereon fully prepaid and Certified to be placed
15  in the United States Mail at Stanislaus County, California.

16  [  ] PERSONAL SERVICE - By hand delivering copies to the above address (CCP § 415.10)

17       I declare under the penalty of perjury under the law of the State of California that the foregoing is
true and correct.
18

19

20       DATED this         day of January, 2015.

21                                                                          ▸

22                                    _____
                                     An uninterested party to the matter herein.
23

24

25

26

27

28