1

2

3

4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7   AL DAVIS PETROVICH,                    Case No.  15-cv-00033-EMC

8              Plaintiff,
                                           **ORDER GRANTING DEFENDANTS'**
9       v.                                 **MOTION TO DISMISS FIRST**
                                           **AMENDED COMPLAINT**
10  OCWEN LOAN SERVICING, LLC, et al.,
                                           Docket No. 45
11             Defendants.

12

13          Plaintiff Al Davis Petrovich, a pro se litigant, has filed suit against Ocwen Loan Servicing

14  and Western Progressive (collectively "Defendants").  Docket No. 44, First Amended Complaint

15  ("FAC").  Mr. Petrovich has asserted claims for, *inter alia*, wrongful foreclosure, slander of title,

16  and violation of California Business & Professions Code § 17200.  Currently pending before the

17  Court is Defendants' motion to dismiss.  For the reasons stated below, the Court **GRANTS**

18  Defendants' motion to dismiss.  The dismissal is with prejudice.

19                  **I.      FACTUAL & PROCEDURAL BACKGROUND**

20          In his first amended complaint, Mr. Petrovich alleges as follows.

21          Mr. Petrovich owns certain real property located in Rio Dell, California.  FAC ¶ 5.  On

22  November 14, 2004, Mr. Petrovich obtained a $180,000 mortgage loan from Option One

23  Mortgage Corporation.  Docket No. 46-1, Defendants' Request for Judicial Notice ("D's RJN"),

24  Ex. 1.

25          The loan was secured with real property, as reflected in the deed of trust.[1]  *See id.* at 1.

26  _____

27  [1] The financing or refinancing of real property in California is generally accomplished by the use
    of a deed of trust.  *Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 125 (2011).  A deed of
28  trust surpassed the common-law mortgage as the "generally accepted and preferred security device
    in California" during the 19th and early 20th centuries, before the California Legislature

(deed of trust).  The deed of trust reflects on its face that Mr. Petrovich is the borrower and Option One Corporation is the lender.  *Id.*  The deed of trust also provides that the trustee for the deed of trust is Premier Trust Deed Services.  *Id.*  The closing date of the trust agreement is May 12, 2006.  FAC ¶ 21.

On November 7, 2011, Sand Canyon Corporation (formerly known as Option One Mortgage Corporation), assigned the deed of trust to Deutsche Bank National Trust Company as trustee for Soundview Home Loan Trust.  D's RJN, Ex. 2.

On June 2, 2014, Leticia N. Arlas, the Assistant Secretary of Sand Canyon Corporation, recorded a "Corrective Assignment of Deed of Trust" to correct "the instrument no. on the assignment recorded on November 07, 2011 as instrument number 2011-22980-1" because the original assignment did not contain the recorded instrument number.  D's RJN, Ex. 3.  Ocwen Loan Servicing, servicing agent for Deutsche Bank National Trust Company requested the recording.  *Id.*; FAC ¶ 24.

On June 7, 2014, Western Progressive was substituted as a trustee under a deed of trust. D's RJN, Ex. 4.  After Mr. Petrovich defaulted on his loan, notice of default was recorded on June 24, 2014, followed by a notice of trustee's sale on December 5, 2014.  D's RJN, Ex. 5, Ex. 6. There was no foreclosure sale.

Plaintiff alleges that his promissory note and deed of trust "were not properly assigned to the Trust on or before the "Closing Date" of May 12, 2006" in violation of the Pooling and Service Agreement and New York Trust Law.  FAC ¶¶ 20-21.  Thus, due to the improper securitization[2] of the note and the deed of trust on Mr. Petrovich's property, "Defendants are

---

eliminated *most* of the legal and economic distinctions between a mortgage that contains a power of sale and a deed of trust.  4 Miller & Starr, Cal. Real Estate § 10:1 p. 13 (3d ed. 2011).  "[I]n California there is little practical difference between mortgages and deeds of trust; they perform the same basic function, and . . . a deed of trust is 'practically and substantially only a mortgage with power of sale.' . . . [A]lthough 'there are no statutory provisions dictating the form or stating the effect of deeds of trust', deeds of trust are analogized to mortgages[,] and the same rules are generally applied to deeds of trust that are applied to mortgages."  *Domarad v. Fisher & Burke, Inc.*, 270 Cal. App. 2d 543, 553 (1969).

[2] In simplified terms, "securitization" is the process where (1) many loans are bundled together and transferred to a passive entity, such as a trust, and (2) the trust holds the loans and issues investment securities that are repaid from the mortgage payments made on the loans.  (Oppenheim

United States District Court
For the Northern District of California

without any right to demand payment, declare default, negotiate or foreclose on Plaintiff's home."
FAC ¶ 17.  Plaintiff also alleges that Defendants "execut[ed] and fil[ed] a fabricated corrective
assignment of deed of trust" to "facilitate a non-judicial foreclosure."  FAC ¶ 22.  Based on
foregoing, Plaintiff asserts the following causes of action: (1) declaratory relief; (2) violation of 15
U.S.C. § 1692; (3) slander of title; (4) wrongful foreclosure; (5) violation of 12 U.S.C. § 2605; and
(6) violation of California Business and Professions Code § 17200.

Pending before the Court is Defendants' motion to dismiss Mr. Petrovich's complaint on
the ground that Mr. Petrovich is not a party to the trust, thus he cannot state a claim based on a
supposedly defective transfer of his loan to a closed investment trust.  Docket No. 53 at 4
("Reply").

## II.   REQUESTS FOR JUDICIAL NOTICE

A.   Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), evidence beyond
the pleading should not be considered unless: (1) the document is attached to or incorporated by
reference into the complaint; or (2) the fact is subject to judicial notice pursuant to Federal Rule of
Evidence 201.  *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to
reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the
trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy
cannot reasonably be questioned."  Fed. R. Evid. 201.  Courts may take judicial notice of
"*undisputed* matters of public record," but generally may not take judicial notice of "*disputed* facts
stated in public records."  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (emphasis
in original).   Facts subject to judicial notice may be considered on a motion to dismiss.  *Mullis v.
U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

The doctrine of incorporation by reference is distinct from judicial notice.  The doctrine

& Trask-Rahn, *Deconstructing the Black Magic of Securitized Trusts: How the Mortgage-Backed
Securitization Process is Hurting the Banking Industry's Ability to Foreclose and Proving the Best
Offense for a Foreclosure Defense*, 41 Stetson L. Rev. 745, 753-54 (2012).

**United States District Court**
For the Northern District of California

"permits a district court to consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the . . . pleadings.'" *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)).

A court "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion. The court may treat such a document as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (internal citations omitted). Such documents do not convert the motion to dismiss into a motion for summary judgment. *Id.* The Ninth Circuit states that "judicial notice is inappropriate where the facts to be noticed are irrelevant." *Meador v. Pleasant Valley State Prison*, 312 F. App'x 954, 956 (9th Cir. 2009).

B.   Defendants' Request

Defendants request judicial notice over six exhibits: (1) A deed of trust recorded on December 16, 2005, in the official records of the Humboldt County Recorder's Office as Document Number 2005-43149-12; (2) Assignment recorded on November 7, 2011, in the official records of the Humboldt County Recorder's Office as Document Number 2011-22980-1; (3) Corrective Assignment recorded on June 2, 2014, in the official records of the Humboldt County Recorder's Office as Document Number 2014-009566-2; (4) a Substitution of Trustee recorded on June 17, 2004, in the official records of the Humboldt County Recorder's Office as Document Number 2014-011191-4; (5) a Notice of Default recorded on June 26, 2014, in the official records of the Humboldt County Recorder's Office as Document Number 2014-011191-4; (6) a Notice of Trustee's sale recorded on December 15, 2014, in the Official Records of the Humboldt County Recorder's Office as Document Number 2014-021257-2. Defendants' Request For Judicial Notice ("D's RJN"), Docket No. 46. The Court **GRANTS** Defendants' request for judicial notice of the Exhibits 1-6. In this case, Exhibits 1-6 are judicially noticeable because these documents are matters of public record. *See Valasquez v. Mortgage Elec. Registration Sys., Inc.*, No. C 08-

4

United States District Court
For the Northern District of California

3818 PJH, 2008 WL 4938162, at *2 (N.D. Cal. Nov. 17, 2008) (taking judicial notice of a deed of trust, assignment of deed of trust, notice of default, substitution of trustee, rescission of notice of default and election to sell under deed of trust); *Grant v. Aurora Loan Services, Inc.*, 736 F.Supp.2d 1257, 1264 (C.D. Cal. 2010) (noting that a "[party] provided a reference number for the document, showing that it was in fact recorded; this demonstrates that it is a public record"); *Fimbres v. Chapel Mortgage Corp.*, No. 09-CV-0886-IEG, 2009 WL 4163332, *3 (S.D. Cal. Nov. 20, 2009) (taking judicial notice of a deed of trust, notice of default, notice of trustee's sale, assignment of deed of trust, and substitution of trustee as each was a public record); *Angulo v. Countrywide Home Loans, Inc.*, No. 1:09-CV-877-AWI-SMS, 2009 WL 3427179, *3 n. 3 (E.D. Cal. Oct.26, 2009) ("The Deed of Trust and Notice of Default are matters of public record. As such, this court may consider these foreclosure documents"); *Distor v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, *2 (N.D. Cal. Oct. 22, 2009) (finding that a deed of trust, notice of default and election to sell under deed of trust, and notice of trustee's sale were matters of public record and thus proper subjects of judicial notice).  I recommend that the Court take judicial notice of the existence of the assignment of deed of trust, but not the veracity of the facts recited therein. *See Lee*, 250 F.3d at 690 (judicial notice of public records is limited to the existence of the documents, not the truth of the matters stated in them).  Mr. Petrovich objected to Defendants' Request for Judicial Notice on numerous grounds that don't have any legal support.  Docket No. 52, Plaintiff's Opposition to Defendants' Request for Judicial Notice.  For the reasons stated above, Plaintiff's objections are denied.

C.    Plaintiff's Request

        Without opposition from Defendants, Plaintiff filed with the Court three exhibits referenced in the FAC: (1) Exhibit C: Declaration of Dale M. Sugimoto, filed in *In re Wilson*, 413 B.R. 330, 331-32 (Bankr. E.D. La. 2009); (2) Exhibit D: Plaintiff's July 17, 2014, letter to Ocwen-Ronald M. Faris, President and CEO; (3) Exhibit E: Plaintiff's December 12, 2014 letter to Ocwen Loan Servicing, LLC. Docket No. 44.  The Court **GRANTS** Plaintiffs' request for judicial notice of the Exhibits C-E.  In this case, Exhibit C is judicially noticeable because a court may take judicial notice of court records in another case.  *See e.g.*, *United States v. Wilson*, 631 F.2d 118

United States District Court
For the Northern District of California

(9th Cir. 1980) (stating that a court may take judicial notice of court records in another case).

Notice can be taken, however, not for the truth of the matters asserted in the litigation, but rather

to establish the fact of such litigation and related filings. *San Luis v. Badgley*, 136 F.Supp.2d

1136, 1146 (E.D. Cal. 2000).  As for exhibits D and E, Mr. Petrovich makes reference to these

letters in Paragraph 26 of the FAC.  "A district court may consider material that is 'properly

submitted as part of the complaint'; or, if the documents are not physically attached to the

complaint, they may be considered if the documents' 'authenticity is not contested and the

plaintiff's complaint necessarily relies on them.'" *Helm v. Alderwoods Group, Inc.*, 696

F.Supp.2d 1057, 1072 (N.D. Cal. 2009) (quoting *Lee*, 250 F.3d at 688 (9th Cir. 2001)).  Thus, it is

appropriate to take judicial notice of Plaintiff's July 17 and December 12, 2014 letters.  *Foster*

*Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 990 (E.D. Cal. 2012).

## III.  <u>DISCUSSION</u>

A.   <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for

failure to state a claim for relief.

> "To survive a motion to dismiss, a complaint must contain sufficient
> factual matter, accepted as true, to 'state a claim to relief that is
> plausible on its face.'"  A claim is facially plausible "when the
> plaintiff pleads factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged."  The plausibility standard requires more than the sheer
> possibility or conceivability that a defendant has acted unlawfully.
> "Where a complaint pleads facts that are merely consistent with a
> defendant's liability, it stops short of the line between possibility
> and plausibility of entitlement to relief."  Dismissal under Rule
> 12(b)(6) is proper only when the complaint either (1) lacks a
> cognizable legal theory or (2) fails to allege sufficient facts to
> support a cognizable legal theory.

*Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

(2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

B.   <u>Wrongful Foreclosure</u>

Mr. Petrovich contends that because the corrective assignment of deed of trust was

recorded in 2014 after the closing date of May 12, 2006, Defendants are in violation of the pooling

and servicing agreement ("PSA") applicable to the trust.  FAC ¶ 65.  When a borrower asserts an assignment was ineffective, a question often arises about the borrower's standing to challenge the assignment of the loan (note and the deed of trust) – an assignment to which the borrower is not a party.  *Glaski v. Bank of America, Nat'l Ass'n*, 218 Cal. App. 4th 1079 (2013).  Defendants challenge Mr. Petrovich's argument on the ground that Mr. Petrovich has no standing to challenge any noncompliance with the PSA.  *See* Docket No. 45 at 3-7 ("MTD").

There is a split of authority on the issue as to whether a borrower may challenge the securitized trust's chain of ownership by alleging that attempts to transfer the deed of trust to the securitized trust occurred after the trust's closing date.  *Compare Glaski*, 218 Cal. App. 4th at 1097-98 (finding that plaintiff had sufficiently stated a claim for wrongful foreclosure by alleging that the deed of trust was transferred to a securitized trust after the pool's closing date) *with Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 515 (2013) (finding that the plaintiff lacked standing to enforce the investment trust's pooling and servicing agreement because she was an unrelated third party to the alleged securitization whose obligations under the promissory note remained unchanged).

Mr. Petrovich points out that the California Supreme Court granted review on the issue of whether, in a wrongful foreclosure  case, a borrower has standing to challenge a defective assignment of a note and deed of trust that allegedly rendered the assignment void.  Docket No. 51 at 4-5 ("Opp'n"); *Yvanova v. New Century Mortg.Corp.*, 331 P.3d 1275 (Cal. 2014).  This Court need not resolve the issue of standing because *Yvanova* is a post-foreclosure case.  By contrast, this case is a pre-foreclosure case.

In *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149 (2011), the California Court of Appeal held that because of the expeditious nature of California's non-judicial foreclosure process, there is generally no preemptive right of action to determine standing to foreclose, or claim for damages for wrongful initiation of foreclosure proceedings absent a completed sale.  *Id.* at 1154.  *See Gieseke v. Bank of Am., N.A.*, No. 13-CV-04772-JST, 2014 WL 718463, at *3 (N.D. Cal. Feb. 23, 2014); *Tamburri v. Suntrust Mortgage, Inc.*, No. 11-CV-02899-JST, 2013 WL 4528447, at *5 (N.D. Cal. Aug. 26, 2013) *aff'd sub nom. Tamburri v. SunTrust*

1   *Mortgage, Inc.*, 623 F. App'x 878 (9th Cir. 2015).  As this Court recently held in *Hills v.*

2   *Mortgage Electronic Registration System, Inc. et al.*, No 15-cv-05108-EMC:

3

4          Here, regardless of the debtor's standing to challenge an assignment,
           courts are generally not authorized to intervene in the nonjudicial
5          foreclosure process established by California law.  As explained in
           *Gomes*, "the policy behind nonjudicial foreclosure [is] providing a
6          quick, inexpensive and efficient remedy."  *Id.*  If the Court were to
           allow [the borrower] to proceed with her PSA challenge, it would
7          likely get embroiled in complex trust issues (in deciding the validity
           of the assignment which was made after the PSA closing date, a
8          matter which may turn on, *e.g.*, an interpretation of another state's
           law on trusts (*see, e.g.*, *Glaski*, 218 Cal. App. 4th at 1096-97)
9          (interpreting New York law in finding that transfer to the trust post-
           closing date was void); this would go against the speedy resolution
10         intended by the nonjudicial foreclosure process.

11         Second, although *Gomes* carved out an exception and indicated that
           a plaintiff could bring a preemptive wrongful foreclosure action in
12         court (*i.e.*, go outside of the nonjudicial foreclosure process) so long
           as he or she had a "*specific factual basis* for alleging that the
13         foreclosure was not initiated by the correct party," *id.* at 1156
           (emphasis in original), [the borrower] has not pled sufficient factual
14         allegations to place his case within that exception.

15   *Hills v. Mortgage Electronic Registration System, Inc. et al.*, No 15-cv-05108-EMC, at * 10 (N.D.

16   Cal. Feb. 5, 2016).

17          As in *Hills*, Mr. Petrovich "simply pled a 'technicality' which [he] contends nullifies the

18   intended assignment – *i.e.*, that the transfer of the note and/or deed of trust was not timely made.

19   The contention stands in contrast to situations in which the exception to the *Gomes* bar could

20   apply – situations where there were specific facts indicating that the foreclosing party was not the

21   real owner of the note."  *Id.  Compare Frazier*, 2011 WL 6303391, at *5 ("Even if Plaintiffs were

22   right that their loan was not timely transferred to the trust, that does not mean that the owner of the

23   note and deed of trust could not therefore foreclose.  That would simply mean that the loan was

24   not put into the trust (*i.e.,* the investment vehicle).") *with Tamburri*, 2011 WL 6294472, at *10

25   (stating that *Gomes* is inapposite because the plaintiff's complaint identified a specific factual

26   basis that the foreclosing parties had no actual authority to foreclose); *Gates v. LLP Mortg., Inc.*,

27   No. CV 13-8737 DSF (PLAx), 2013 U.S. Dist. LEXIS 183638, at *6 (C.D. Cal. Dec. 30, 2013)

28   (recognizing the exception in *Gomes* and indicating that a forged assignment could potentially

United States District Court

For the Northern District of California

1  meet that exception but plaintiff's "bald assertion that the assignment was forged, absent other

2  supporting allegations, is not a specific factual basis"); *Bergman v. Bank of Am., N.A.*, No. C-13-

3  00741 JCS, 2013 U.S. Dist. LEXIS 153173, at *15, 76 (N.D. Cal. Oct. 23, 2013) (concluding that

4  plaintiffs met the *Gomes* exception because they alleged that the bank had sold the deed of trust

5  and therefore a substitution of trustee executed by the bank thereafter was void); *Barrionuevo v.*

6  *Chase Bank, N.A.*, 885 F. Supp. 2d 964, 966-67, 974 (N.D. Cal. 2012) (holding that a claim for

7  wrongful foreclosure was adequately pled where the allegation was that Chase could not have

8  obtained the deed of trust through a WaMu asset sale because the deed of trust had previously

9  been sold by WaMu through a securitization).  The kind of technicality alleged here is not

10  sufficient to justify an exemption from the otherwise applicable bar on judicial intervention into

11  the nonjudicial foreclosure process.

12      Petrovich also asserts as another basis for his claim that "defendants rely on falsified

13  documents" to foreclose and he wants to find "who the true and current creditor/holder in due

14  course is of his 'Note' and 'Deed of Trust' and what rights, if any, the Defendants have regarding

15  Plaintiff's 'Note' and 'Deed of Trust.'"  FAC ¶ 52.  To support his fraud theory, Mr. Petrovich

16  asserts that "Defendants attempted to cover up the lack of proper assignment, transfer, or grant of

17  Plaintiff's 'Deed of Trust' by executing and filing a fabricated Corrective Assignment of Deed of

18  Trust."  FAC ¶ 22.  As explained above, Ocwen requested the recording of the corrective

19  assignment because the original assignment did not contain the recorded instrument number.[3]  D's

20  RJN, Ex. 3; FAC ¶ 24.  Again, Mr. Petrovich alleges a mere technicality; he does not allege a

21  fraudulent scheme to foreclose by a party with no financial right or interest.  This is insufficient

22  "specific factual basis" to warrant an exception to *Gomes*.

23      Accordingly, the Court concludes that Mr. Petrovich has failed to allege any cognizable

24  claim based on the chain of title.  His complaint, therefore, must be dismissed with prejudice.

25

26

27  ---

[3] "The purpose of this corrective assignment is to correct the instrument no. on the assignment
28  recorded on November 07, 2011 as instrument number 2011-22980-1."  Corrective Assignment of
Deed of Trust, D's RJN, Ex. 3.

United States District Court
For the Northern District of California

C.      Declaratory Relief

Based on the above allegations, Mr. Petrovich requests a court order "stating that none of the Defendants have any right or interest in Plaintiff's "Note," "Deed of Trust" or Property which authorizes them to collect Plaintiff's payments or enforce the "Note" or "Deed of Trust." FAC ¶ 33. Mr. Petrovich acknowledges in both his FAC and opposition to Defendants' motion to dismiss that he executed both a promissory note in the amount of $180,000, and a deed of trust securing his debt on November 14, 2005. D's RJN, Ex. 1. Consequently, there is no dispute between the parties as to the existence of the secured home loan debt. There is also no dispute that the deed of trust contains: (1) an explicit power of sale clause in favor of the beneficiary-creditor; (2) provisions setting forth Mr. Petrovich's obligations with regard to repaying the loan and maintaining the property; and (3) provisions stating the beneficiary-creditor may transfer the promissory note at any time without providing notice of the transfer to Mr. Petrovich. D's RJN, Ex. 1 ¶¶6, 19.

Mr. Petrovich's default on the secured debt triggered the beneficiary-creditor's option under the deed of trust's power of sale clause, and section 2924 of the California Civil Code allows the "trustee, mortgagee, or beneficiary, or any of their authorized agents" to record a notice of default and election to sell the real property security, thus initiating the nonjudicial foreclosure process. Cal. Civ. Code § 2924 (a)(1). Because of the reasons stated above, Mr. Petrovich cannot challenge Defendants' authority to initiate nonjudicial foreclosure, the Court **DISMISSES** Plaintiff's cause of action for declaratory relief without leave to amend.

D.      Violation of 15 U.S.C. § 1692

Plaintiff alleges that Defendants violated 15 U.S.C. §1692a(6) by "attempting to collect on Plaintiff's purported obligation" and thus are debt collectors within the meaning of the Fair Debt Collection Practices Act. ("FDCPA"). FAC ¶ 39.

Title 15, United States Code, §1692a(6) in pertinent part provides:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who

10

1  regularly collects or attempts to collect, directly or indirectly, debts
   owed or due or asserted to be owed or due another.

2  15 U.S.C.A. § 1692a(6).

3      Mr. Petrovich failed to state a FDCPA claim because he cannot sufficiently allege that

4  Ocwen Loan Servicing and Western Progressive are "debt collectors."  To be held liable for

5  violation of the FDCPA, a defendant must fall within the FDCPA's definition of "debt collector."

6  *See Heintz v. Jenkins*, 514 U.S. 291, 294 (1995).  The term does not include, however, any person

7  collecting or attempting to collect any debt owed or due or asserted to be owed or due another to

8  the extent such activity . . . concerns a debt which was originated by such person [or] . . . concerns

9  a debt which was not in default at the time it was obtained by such person."  15 U.S.C. §

10  1692a(6)(F)(iii) & (iii).  Indeed, "[t]he legislative history of section 1692a(6) indicates

11  conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing

12  company, or an assignee of a debt, as long as the debt was not in default at the time it was

13  assigned."  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (citing S.Rep. No. 95-

14  382, 95th Cong., 1st Sess. 3, *reprinted in* 1977 U.S. Code Cong. & Ad. News 1695, 1698).  Here,

15  Defendant Ocwen Loan Servicing was the loan servicer before the mortgage went into default, and

16  the FDCPA excludes persons attempting to collect a debt that was not in default at the time it was

17  obtained. *Id.*

18      Moreover, "the law is clear that foreclosing on a property pursuant to a deed of trust is not

19  a debt collection within the meaning of  . . . the FDCA.  *Gamboa v. Tr. Corps*, No. 09-0007 SC,

20  2009 WL 656285, at *4 (N.D. Cal. Mar. 12, 2009).  Therefore, as the trustee under the deed of

21  trust with the power to sell the foreclosed property, Western Progressive cannot have violated the

22  FDCA.  D's RJN, Ex. 4.  Accordingly, the Court **DISMISSES** Mr. Petrovich's FDCPA claim with

23  prejudice.

24  E.   Slander of Title

25      A claim for slander of title arises when a false statement – "which disparages title to

26  property and causes pecuniary loss" – is published in an unprivileged publication.  *Stalberg v. W.*

27  *Title Ins. Co.*, 27 Cal.App. 4th 925, 929 (1994).  Section 47(c)(1) provides a privilege for

28  publications that serve as communications between interested parties. *Kachlon v. Markowitz*, 168

**United States District Court**
For the Northern District of California

Cal.App. 4th 316, 336 (2008).   That privilege is qualified by the requirement that the communications are not malicious – *i.e.* neither "motivated by hatred or ill will" nor without reasonable basis in fact.  *Id.* (citations omitted).  The Section 47(c)(1) privilege applies to nonjudicial foreclosure notices.  *Id.* at 339.  Mr. Petrovich alleges slander of title based on the publication of a notice of default and a notice of sale, both of which are nonjudicial foreclosure notices under Section 2924.  *See* Cal. Civ. Code § 2924(a)(1); 2924(a)(4).  Such publications are privileged absent a showing of malice.  *Kachlon*, 168 Cal. App. 4th at 339.   For this purpose, malice is defined as actual malice, meaning "'that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.'" *Id.* at 336.  Here, Plaintiff alleges that Defendants fabricated the mortgage documents and recorded the "Notice of Trustee's Sale" knowing that they "were not acting on behalf of the current and true beneficiary."  FAC ¶¶ 56, 58.  For the reasons stated above, Mr. Petrovich's current pleading fails to allege specific facts establishing a plausible claim of malice, and therefore fails to establish that the publications were not privileged; rather, his claims are based on technicalities the legal effect of which is in dispute.  Furthermore, Mr. Petrovich has not alleged sufficient and plausible facts indicating falsity, disparagement of title, or pecuniary loss.  Thus, the Court **DISMISSES** this cause of action without leave to amend.

F.      Violation of 12 U.S.C. § 2605

        "RESPA [as 12 U.S.C. § 2605 is referred to] requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans."  *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665 (9th Cir. 2012) (citing 12 U.S.C. § 2605(e)(1)(A), (e)(2)).  "If the servicer fails to respond properly to such a request, the statute entitles the borrower to recover actual damages and, if there is a 'pattern or practice of noncompliance,' statutory damages of up to $1,000."  *Id.* (citing 12 U.S.C. § 2605(f)).  To state a claim under RESPA, a plaintiff must allege that (1) a defendant violated RESPA; and (2) that defendant's violation caused the plaintiff monetary damages.  *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ("alleging a breach of RESPA duties alone

United States District Court
For the Northern District of California

1   does not state a claim under RESPA.  Plaintiff must, at a minimum, also allege that the breach

2   resulted in actual damages").

3          Mr. Petrovich sent two letters to Defendants asking for loan origination documents and

4   inquiring about the ownership of the loan.  Exs. D, E.  Defendants argue that Plaintiff's claim fails

5   because Mr. Petrovich's letters do not qualify as Qualified Written Requests (QWS) under

6   RESPA.  Reply at 17.  Defendants are correct.  In his letters, Mr. Petrovich was not asking for

7   information relating to the servicing of his loan.[4]  A QWR must seek information relating to the

8   *servicing* of the loan; a request for loan origination documents is not a QWR.  *Patacsil v. Wilshire*

9   *Credit Corp.,* No. 2:09-cv-01660-MCE-KJM, 2010 WL 500466 at *5 (E.D. Cal. Feb.8, 2010)

10  (finding that request for information "simply relat[ing] to the origination of the loan, not any

11  servicing errors" was not a QWR); *Lima v. Am. Home Mortg. Servicing,* No. C 09-3561 CW, 2010

12  WL 144810 at *3 (N.D. Cal. Jan.11, 2010) (holding that a request for "documents associated with

13  the loan's origination" is not a QWR under RESPA).  Because a request for loan origination

14  documents does not, as a matter of law, constitute a QWR, Plaintiff has failed to state a claim for a

15  RESPA violation.  Therefore, the Court **DISMISSES** this cause of action without leave to amend.

16  G.     Violation of the UCL

17         In his sixth cause of action, Mr. Petrovich alleges that "Defendants have committed and

18  continue to commit unlawful, unfair and fraudulent acts in direct violation of Cal. Bus. And Prof.

19  Code section 17200, et seq."  FAC ¶ 83.

20         California's Unfair Competition Law prohibits any "unlawful, unfair or fraudulent

21  business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each of these three adjectives

22  [unlawful, unfair or fraudulent] captures a separate and distinct theory of liability."  *Rubio v.*

23  *Capital One Bank,* 613 F.3d 1195, 1203 (9th Cir.2010) (quotation marks omitted).

24         Here, Mr. Petrovich did not allege an "unfair" claim.  Mr. Petrovich stated in his FAC that

25  "described unlawful and fraudulent acts and practices gave Defendants an unfair advantage over

26  _____

27  [4] *See e.g.*, Ex. D: "I request the name and address of the original creditor.  [] This request includes
    a viewing of the original Trust Deed and Promissory Note."; Ex. E: "Please provide the below-

28  requested information and any additional information or documents you think establishes your
    right to make the demands or to carry out the threats of the Notice."

United States District Court
For the Northern District of California

their competitors.  Defendants' well coordinated scheme of deception has unjustly enriched them at the expense of unknowing Californians."  FAC ¶ 89.  His fraud claim is based on "recordation of false documents;" it fails because there is nothing fraudulent in the "Corrective Assignment of Deed of Trust."  FAC ¶ 86.

Under the "unlawful" prong, the UCL incorporates other laws and treats violations of those laws as unlawful business practices independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000) (citing *Cel-Tech Comms., Inc. v. Los Angeles Cellular Co.*, 20 Cal.4th 163, 180 (1999)).  "To state a cause of action based on an unlawful business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law."  *Prakashpalan v. Engstrom, Lipscomb and Lack*, 223 Cal.App.4th 1105, 1133 (Cal. Ct. App. 2014) ("unlawful practices are practices 'forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory or court-made.'").

Here, Plaintiff alleges that "Defendants' Ocwen and Western unlawful conduct violated 15 U.S.C. § 1692, 12 U.S.C. § 2605 and several other California and federal laws."  FAC ¶ 85. Because the Court dismissed all Mr. Petrovich's legal claims, Mr. Petrovich cannot state a claim for unlawful conduct under the UCL.  Thus, the Court **DISMISSES** this cause of action without leave to amend.]

## IV.   CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED** with prejudice.

This order disposes of Docket No. 45.  The Clerk shall enter judgment and close the file in this case.

**IT IS SO ORDERED**.

Dated: February 12, 2016

_____
EDWARD M. CHEN
United States District Judge